Town of Petersburgh v 3M Co.
2026 NY Slip Op 04019
June 25, 2026
Appellate Division, Third Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

Town of Petersburgh, Respondent,
v
3M Company, Formerly Known as Minnesota Mining and Manufacturing Co., et al., Defendants, and AGC Chemicals Americas Inc. et al., Appellants.

Decided and Entered:June 25, 2026
CV-25-0809
Calendar Date: April 28, 2026
Before: Garry, P.J., Clark, Fisher, Mackey And Ryba, JJ.

Crowell & Moring LLP, Washington, DC (Peter C. Condron of counsel), for AGC Chemicals Americas Inc., appellant.
Napoli Shkolnik PLLC, New York City (Nicholas Mindicino of counsel), for respondent.

[*1]
Mackey, J.
Appeal from an order of the Supreme Court (Adam Silverman, J.), entered April 10, 2025 in Rensselaer County, which partially denied defendants' motion to dismiss the complaint.
In February 2016, perfluorooctanoic acid (hereinafter PFOA) was discovered in plaintiff's drinking water — the facts underlying that discovery are familiar to this Court, having been the subject of two prior related appeals (Burdick v Tonoga, Inc., 191 AD3d 1220 [3d Dept 2021]; Burdick v Tonoga, Inc., 179 AD3d 53 [3d Dept 2019]). As a result of this discovery, the Department of Environmental Conservation (hereinafter DEC) entered into a consent order with nonparty Tonoga, Inc., doing business as Taconic (hereinafter Taconic), to install a treatment system and pay for all past and future state costs related to the installation of that treatment system. Thereafter, plaintiff entered into two separate settlement agreements with Taconic for reimbursement of costs arising from the remediation effort.
In 2022, plaintiff commenced this action against several entities associated with the sale and manufacture of PFOA. Plaintiff alleged several tort and negligence causes of action, seeking to recover costs and expenses related to the remediation of the PFOA contamination of its water supply, "including [the] acquisition of clean water and distribution system installation." Defendants collectively moved to dismiss, as is pertinent here, for failure to state a cause of action pursuant to CPLR 3211 (a) (7),FN1 which motion plaintiff opposed. Supreme Court denied the motion, in relevant part, finding that plaintiff had successfully pleaded a cause of action for recoverable damages, that the damages sought were not speculative or barred by the doctrine of double recovery, and that there was a basis for plaintiff to pursue stigma damages resulting from negative publicity related to the PFOA contamination of its water source.FN2 Defendant AGC Chemicals Americas Inc. (hereinafter defendant) appeals.FN3
"When presented with a motion to dismiss under CPLR 3211, we must accept the facts alleged in the complaint as true and accord the nonmoving party the benefit of every possible favorable inference and determine only whether the facts as alleged fit within any cognizable legal theory" (Singe v Bates Troy, Inc., 206 AD3d 1528, 1530 [3d Dept 2022] [internal quotation marks, brackets and citations omitted]; see Brown v University of Rochester, 224 AD3d 1180, 1181 [3d Dept 2024]). "The question to be resolved on such a motion is not whether the plaintiff can ultimately establish his or her allegations and is likely to prevail, but whether, if believed, his or her complaint sets forth facts that constitute a viable cause of action" (F.F. v State of New York, 194 AD3d 80, 83 [3d Dept 2021] [internal quotation marks, brackets and citations omitted], appeal dismissed & lv denied 37 NY3d 1040 [2021], cert denied 596 US ___ , 1425 S Ct 2738 [2022]; accord Brown v University of Rochester, 224 AD3d at 1181).
Plaintiff commenced this action seeking to recover damages for costs and expenses related to the PFOA contamination of its water supply. Specifically, as is relevant here, plaintiff claims damages related to the "present and future expansion of its [water] distribution system, including acquisition of clean water and distribution system installation, to offer an alternative to the [affected] private well owners to clean water free of PFOA." Defendant contends that Supreme Court improperly denied its motion to dismiss, arguing that plaintiff failed to state a cause of action for recoverable damages inasmuch as the consent order and subsequent settlements with Taconic already provided for damages such that plaintiff's claims are barred by the doctrine of double recovery and are otherwise speculative. We disagree.
"The purpose of awarding damages in a tort action is to make the plaintiff whole and, when a plaintiff seeks to recover damages for an injury to property, the proper measure of damages is typically the lesser of the cost to repair or the diminution of market value. The damages cannot be remote, contingent or speculative. They need not be immediate, but need to be so near to the cause only that they may be reasonably traced to the event" (WFE Ventures, Inc. v GBD Lake Placid, LLC, 197 AD3d 824, 834 [3d Dept 2021] [internal quotation marks, brackets and citations omitted]). "Double recovery is not permitted for a single injury, even if a [plaintiff] can prove separate causes of action that result in the same injury" (Hauser v Fort Hudson Nursing Ctr., Inc., 202 AD3d 45, 53 [3d Dept 2021] [citations omitted]).
The damages sought here center upon plaintiff's assertion that water that has been treated to remove contaminants is not equivalent to water that is wholly uncontaminated. In this regard, we are mindful that, even where property has been ostensibly restored, damages may yet remain. The record reflects that plaintiff was not a party to DEC's consent order with Taconic and, critically, that order addresses remediation efforts and expenses but not the acquisition of an alternate clean water source. Plaintiff's subsequent related settlement agreements with Taconic — which agreements did not involve defendants — likewise do not cover costs related to obtaining a new water source. To be sure, plaintiff acknowledges that it has already received significant recovery under the foregoing agreements. Nevertheless, upon this record, we agree that plaintiff has demonstrated that the relief sought in the instant matter has not yet been fully addressed. Accordingly, plaintiff's claims for monetary damages related to the acquisition of a clean water source alternative are not barred by the doctrine of double recovery (see generally Schwed v Turoff, 73 AD2d 615, 615 [2d Dept 1979]). To the extent that aspects of plaintiff's desired relief are encompassed by the consent order and settlement agreements, such damages may be offset so that the "nonsettling [*2]defendants should not bear more than their fair share of a plaintiff's loss" so as to avoid the possibility of double recovery (Whalen v Kawasaki Motors Corp., 92 NY2d 288, 292 [1998]; see General Obligations Law § 15-108 [a]; Napierski v Finn, 229 AD2d 869, 871 [3d Dept 1996]).
We also reject defendant's related contention that plaintiff's asserted damages are speculative, warranting dismissal. To begin, it is undisputed that plaintiff has indeed already suffered the PFOA contamination of its water source. Moreover, in addressing the motivation underlying the damages sought in the instant matter, plaintiff submitted the affidavit of Heinz Noeding, a town council member, who emphasized significant challenges encountered and concerns raised by residents who have private wells and currently rely upon at-home water filtration systems for PFOA removal. Noeding further averred that plaintiff has faced population decline and associated challenges since the contamination of its water source, due to stigma for its "well-known water pollution problem." Accepting the foregoing as true and according plaintiff the benefit of every possible favorable inference, we cannot conclude that the damages claimed are wholly speculative (see WFE Ventures, Inc. v GBD Lake Placid, LLC, 197 AD3d at 834-835), or that plaintiff failed to demonstrate a basis for stigma-associated damages as alleged (see Matter of Commerce Holding Corp. v Board of Assessors of Town of Babylon, 88 NY2d 724, 732 [1996]; Turnbull v MTA N.Y. City Tr., 28 AD3d 647, 649 [2d Dept 2006]; see generally Halliday v Norton Co., 265 AD2d 614, 617 [3d Dept 1999], lv denied & dismissed 94 NY2d 894 [2000]).
Finally, we reject defendant's argument that dismissal of the complaint was warranted under the doctrine of primary jurisdiction. "Under the doctrine of primary jurisdiction, a court has the discretion to refrain from exercising jurisdiction over a matter where an administrative agency also has jurisdiction, and the determination of the issues involved, under a regulatory scheme, depends upon the specialized knowledge and experience of the agency" (Romine v Laurito, 186 AD3d 913, 915 [3d Dept 2020], appeal dismissed 36 NY3d 939 [2020], appeal dismissed & lv denied 36 NY3d 1088 [2021][citations omitted]). "The doctrine of primary jurisdiction is intended to co-ordinate the relationship between courts and administrative agencies to the end that divergence of opinion between them not render ineffective the statutes with which both are concerned, and to the extent that the matter before the court is within the agency's specialized field, to make available to the court in reaching its judgment the agency's views concerning not only the factual and technical issues involved but also the scope and meaning of the statute administered by the agency" (Calle v National Grid USA Serv. Co., Inc., 230 AD3d 556, 556-557 [2d Dept 2024] [internal quotation marks and citations omitted]; accord Frasier v Niagara Mohawk Power [*3]Corp., ___ AD3d ___, ___, 2026 NY Slip Op 01110, *2 [3d Dept 2026]). "There is no fixed formula governing the application of the doctrine to the facts of a particular case. Rather, the court must determine in each case whether the reasons for the doctrine are present and whether the purposes of the doctrine will be served by its application" (Frasier v Niagara Mohawk Power Corp., ___ AD3d at ___, 2026 NY Slip Op 01110, *2 [internal quotation marks and citations omitted]).
Defendant is correct that DEC has relevant expertise and has been directly involved in establishing the PFOA-remediation efforts and related monitoring in the underlying matter. Significantly, however, "the consent order and other announcements, upon which defendant relies, do not address all of the relief requested by plaintiff[ ]," nor do they involve defendant, and there is no basis in the record to conclude that DEC has otherwise taken action in this regard (Burdick v Tonoga, Inc., 191 AD3d at 1222). Indeed, DEC may never consider the merits of an alternate clean water source, as is sought by plaintiff here. Defendant's position that a resolution in favor of plaintiff in the instant matter will necessarily conflict with DEC's efforts to address the underlying PFOA contamination is unsupported. Accordingly, we agree that application of the doctrine of primary jurisdiction is not warranted here (see Frasier v Niagara Mohawk Power Corp., ___ AD3d at ___, 2026 NY Slip Op 01110 at *2; Burdick v Tonoga, Inc., 179 AD3d at 1222; compare Romine v Laurito, 186 AD3d at 915).
Garry, P.J., Clark, Fisher and Ryba, JJ., concur.
ORDERED that the order is affirmed, with costs.

Footnotes

Footnote 1
In May 2024, defendants 3M Company and E.I. du Pont de Nemours and Company jointly filed stipulations of dismissal following settlements in a federal action.

Footnote 2
Supreme Court granted that part of defendants' motion seeking to dismiss plaintiff's cause of action for punitive damages.

Footnote 3
Defendants Daikin America, Inc. and Shamrock Technologies, Inc. also appealed, however, they have since withdrawn their respective appeals.